Next case today is 4120129, Fraysure v. Mason for the appellant, Monica Hawkins for the appellee, David Cox. You may proceed. Madam Deputy Court Counsel, my name is Monica Hawkins and I represent Nicole Mason with regard to the appeal in this matter. Nicole and the appellee, Matthew, have a child together. Her name is Isabella. They were never married and they did not live together at the time of this incident. On or about May 14, Matthew came to Nicole's house to retrieve Isabella for a visitation. Matthew took Isabella home and upon changing her diapers, saw some bruises on her leg. Eventually took her to the hospital. A couple days later, obtained an order of protection on an emergency basis. That was on May 16, 2011. On January 6, 2012, a plenary hearing was held. After a two-day hearing, the lower court granted the petition for order of protection and granted a plenary order for Matthew and gave him custody of the minor child. We argue, Your Honors, that the lower court was wrong for several reasons. First, it was against the manifest weight of the evidence and the trial court found that the minor was abused pursuant to the Domestic Violence Act. In this case, Your Honors, there is no dispute that the bruises occurred while Isabella was in the custody of Nicole. However, Your Honors, the bruises were explained and satisfactorily explained by Nicole. One of the... Wait, wait. What do you mean satisfactorily explained by Nicole? The trial judge is the potted plant in the courtroom and she's, hey judge, that's what she said. Next case. They were explained that they were not caused maliciously, they were not caused intentionally, and they were not caused purposely. And the judge had to accept and believe all of that. He didn't have to accept and believe all of that, but then he also listened to the other side, along with my argument is that there was other evidence which was allowed in over Nicole's objection, which had a cumulative effect, which the judge stated at the end of the hearing, there's evidence he should not have allowed in, but he did anyway, but I didn't take that into consideration. Given the fact that the bruises were explained, as well as the cumulative effect of this irrelevant evidence that the evidence. There are two sides of the story. Nicole was the only one who was there. And one of the bruises that she stated was caused was when Isabella, she was 16 months at the time, was playing around with Mega Lego blocks. She stumbled, fell, and fell on a Mega Lego block. In trial, there were pictures of the bruise, the Mega Lego block matched up to the bruise on the picture which was presented at trial. One of the other bruises which were on her leg was caused by Isabella was dancing on the couch and she was getting ready to fall off. Instinctively, Nicole goes to grab for her, grabs her leg before she falls off, thus causing bruises. Had Nicole purposefully caused these bruises, she didn't have to allow this visit with Matthew. There was no court-ordered visitation for Matthew. Before the visitation even occurred, Nicole called Matthew and said, hey, just want to let you know there's bruises on Isabella's leg. Matthew says, can I have her early? My parents are in town. Let's take them out to lunch. Sure, that's fine. She's taking a nap. Come get her early. She lets Isabella go knowing that there are bruises on her leg, knowing that she had already told Matthew. Had she thought that she had done something wrong, she could have said, hey, she's sick. I'm not going to send her. Why don't you just wait a couple of days and you can have a make-up visitation or what have you. She had nothing to hide because she did not cause these bruises on purpose. Was there medical testimony, though? There was medical testimony. There was, I believe, an emergency room nurse testified that, in her opinion, that there was suggestions of abuse. However, the emergency room did do a background check and looked into Isabella. She had no old bruises. She did not have any indication of old fractures or old broken bones. Therefore, there's no even history. I thought there was, and I could get this confused with another case, but I thought there was testimony that these bruises were not consistent with some of the explanation that the mother gave. There, I was not... And I think, in particular, when she was falling off the couch, isn't this the case? The child was falling off the couch. I don't believe it was the emergency room nurse who stated that. I believe it was Anna Denton, if I recall correctly, who was a juvenile officer who did the investigation in this matter. And I believe it was her opinion that children are top-heavy, therefore, it doesn't make sense for someone to grab a child by the legs. And that was only her opinion. In my opinion, when someone's falling, you instinctively grab what you have. If the child's falling over, you grab what you can't. How about in the judge's opinion? In the judge's opinion, Your Honor, this case, he was... He considered evidence which he should not have. What was that? One of them was he allowed in, over Nicole's objection, the criminal background of Nicole's boyfriend, who did not testify for either side, who was not listed as a respondent, who was not even mentioned as a potential perpetrator in this action. He was not present in the trial. The judge allowed it in. However, when Nicole attempted to bring up Matthew's criminal background, they objected and the judge sustained it. He didn't let in Matthew's criminal background, the one who was seeking custody in the OP case, but he let in Nicole's boyfriend's criminal background. Another thing which he allowed in was the fact that Nicole, while she was pregnant with How that was relevant as to whether these bruises were intentionally caused... The three pages in your brief in which you argue with the headache and reserve of the court to allow in a majority of the evidence brought forth by the appellee contained no citations to the record. And I realize that and I apologize. I apologize that I realized that when I read his brief, Mr. Cox's brief, I realized that there were no citations. I had marked them in the record with my little stickies and then I didn't go back and put them in and I truly apologize. To this court for not putting the citations in there. But the heading is rather strange, Counsel. We don't view evidentiary rulings by a majority or minority. We review evidentiary rulings individually. You say the court, reserve for the court to allow a majority of the evidence. I don't even know what that means. What I meant by that was, Judge, the evidence that was presented, outlining, which I outlined in my brief, paragraph by paragraph, what the evidence was that he, I believe, was error for the court to allow in and then consider. He does state at the end of the two-day hearing on the record that I probably allowed in more evidence than I should have, but I did not consider it. Given the fact that he stated that, he too then is admitting that there was evidence which should not have been allowed in. For instance, the criminal background of Nicole's boyfriend. The fact that she smoked marijuana during her pregnancy. The fact that how much child support Nicole is receiving. That has nothing to do with, in fact, whether she physically abused his child. Another thing was previous orders of protection and criminal charges filed against Nicole. The criminal charges occurred prior to the birth of Isabella and had actually been dismissed. So it's these types of evidence, which is outlined paragraph by paragraph in my brief, which had a cumulative effect on the judge, which then helped him, in my opinion, decide that there was physical abuse, intentional physical abuse, and because of that, the decision should be reversed. And the final reason why the decision should be reversed is because Matthew misused the Domestic Violence Act in an attempt to obtain custody of this child. In his petition for order of protection, he states that when he picked up Isabella, he took her home and fed her, she ate, and then he changed her diaper, and upon changing her diaper is when he saw the bruises. When he saw the bruises, then he immediately rushed off to the hospital. That's what's indicated in his petition. At trial, he stated that he picked up Isabella, he took her home, he changed her diaper, not eating, changed her diaper, saw the bruises, called to his mother who was in the house. Mother came up and said, oh, take her to the hospital. Instead of taking her to the hospital, they go eat in the house. They eat somewhere in the house. And then four hours after obtaining custody of this child, then he takes her to the hospital. It's not rushed off to the hospital as indicated in his petition, but it's four hours later which comes out in evidence. Had he seriously thought that Nicole had purposely caused these bruises, he would have immediately  None of that happened. He took her and they ate. And then he went to the doctor. And the discharge instructions indicated that Matthew was to contact the police department. He didn't do that. He misused the Domestic Violence Act in an attempt to gain custody, and that's exactly what he did. And for those reasons, I ask your honors to reverse the lower court's decision. Thank you. Okay. Thank you. You'll have rebuttal, Mr. Cox. May it please the court. My name is David Cox and I represent Mr. Fraser in these proceedings. I'm probably going to be startlingly short because I think we can cut straight to two legal issues here. The first issue is, of course, was this decision by the trial court against the manifest weight of the evidence. And interestingly enough, I don't think there's any legal dispute between counsel in this case over whether or not that's the standard. So you have to look at the record and see what Judge Little used primarily to base his findings of abuse on. First of all, it's interesting to note that counsel conceded today that even the respondent in the order of protection, Ms. Mason, conceded that the marks occurred when the daughter was in her care. What was pivotal to Judge Little, it is clear from the record, is that there were four expert witnesses that testified that they examined the girl and the photographs and the evidence before them. An RN nurse in the emergency room that evening, a physician assistant, a police department investigator from the city of Decatur, and a member of DCFS, an investigator, Ms. Benton. And all of them concluded that the abuse appeared to have happened when they were in Ms. Mason's care and that abuse had occurred. So much that they involved state authorities. That's how the police department and DCFS got involved. Counsel made the reference to the judge making this comment at the end of his findings that he shouldn't have let some evidence in. I was trial counsel. Ms. Hawkins was not. So I can tell you the context of that was after two days of hearing that Judge Little was concerned that the hearing had gone on for so long and he said if he had to do it all over again he might not let in as much evidence as he did on both sides and try to be a little bit more restrictive. How was it relevant what the boyfriend's criminal background was? Well DCFS had determined that the boyfriend's background was relevant during their investigation. When the conclusion was made by the department that the abuse had occurred while in the care of Ms. Mason. And part of DCFS's investigation surfaced the information that Isabella had been bounced around for about a week. That the boyfriend had spent some time with her. So DCFS investigated a report which was considered by the trial court. But now you're at trial. Of course DCFS is going to investigate everybody in the house. But how is it relevant when the allegations are that the child was bruised by the mother? Well the child was abused in the mother's care and I think was the answer. What evidence was there that the boyfriend bruised the child? Well the boyfriend had violent tendencies. I think the trial court determined appropriately that if somebody has a series of convictions and arrests for violent tendencies and they're admittedly around the child and in the child's care that they're a potential person who could have committed the abuse. But nobody made that allegation. That he was the abuser. So how is his criminal background relevant? He was a potential abuser. So our argument in the trial court was that the court should consider that this is the kind of person that has been around the child and could have been a perpetrator. What about how was the fact that she smoked marijuana during her pregnancy relevant? I think it's prima facie evidence that she's neglectful and doesn't make decisions in the best interest of her daughter. That's not the basis of the OP. The basis of the OP is the bruising. That happened 18 months earlier and how does that relate to getting a domestic violence order of protection? It doesn't directly. It's relevant background that the court may use to rely on its assessment of the believability of the witnesses and the credibility of the parties. It still comes back and it's in the record that the trial court judge said the pivotal thing to him was the testimony of four expert witnesses. Even if the appellant is correct and the court excluded all other evidence that she was concerned about, you still come back to four direct witnesses. And the comment of the trial court was what was striking to him was that without exception, each of these expert witnesses, and I don't believe that the trial court, the respondent in the trial court even objected to the tendering of the expert witnesses or to their credibility or credentials as an expert witness. What was striking to the trial court was that the pictures of the bruises always seemed to be, these witnesses all made comments that it was more dramatic when you actually saw the girl. The pictures really didn't do, if you'll excuse the phrase, the injury justice. That you didn't see the three dimensions of the injury and of the abusive marks on the daughter. So even if you were to assume for the sake of argument that all the other things that Ms. Hawkins argued should have been excluded by the court, you still come back to a substantial body of evidence which is the testimony of four directly involved experts who concluded there was abuse and then there was the need to involve authorities and take action. The Macon County State's Attorney filed a juvenile petition on this case. The problem is that by introducing all that type of evidence at an order of protection hearing, it looks to the court, at least to me, that you're trying to effect a change of custody through the order of protection rather than in a custody proceeding. None of that was relevant to the issue that was before the court which was, was this child abused by the mother? Well, I guess the concept of the trial court was the concern that we try not to take these cases to the trial court because neither my client nor the court knew exactly what had happened when we were trying this at the trial court. It was concluded and admitted by Ms. Mason that it happened in her care. She came up with some stories. You had to have multiple stories to account for multiple bruises because one story wouldn't cover all the places that there were bruises. And so when the court was trying to determine credibility, and I understand your point, but when the point was trying to consider credibility here, the court looked deeper to try to determine what the nature of the parties were, how they had acted over the course of these young ladies' life, and whether or not there was a pattern here. I don't know how we can take this out of context. Why was there such a long delay between the emergency order of protection and the plenary? This case started in Piatt County, Justice Pope, and Judge Freed's heard it at an initial level. Granted, I think actually what happens is Judge Schanquiler issued the emergency order of protection. It was transferred to Judge Freed's, and Judge Freed's ultimately granted a change of venue to Macon County, where her attorney at the time, Guy Casey, and she resided. There was an F case in Macon County, and the court anticipated there might be a future custody battle, and so it was a very long period of time in getting it docketed. And then there were several postponements in the trial court while the state acted under the juvenile petition against her, based on the same facts, and gave her an opportunity to work through those proceedings. It was not until after the JA case was dismissed approximately in late November or December last year that the court went ahead to hear the emergency order of protection. I think the theory was if the state acted under the juvenile court act that that was the gold standard, and there would not be any further proceedings under the order of protection case. So that's it on manifest way to the evidence, and again my point is even if the court concludes there are aspects of evidence that were cumulative or unnecessary or should not have been considered by the court, you still have the court's own comments, that you have four significant witnesses that have observed the marks and have reached a conclusion. In regards to the custody argument, I would simply state that it's clear that the Domestic Violence Act, backslide 214 under B6, authorizes temporary custody. It would be an interesting situation if a court were able to conclude that there was abuse and then decide that the child should go back to her mother. So the court appropriately made a finding of temporary custody under the plenary. I don't have any quarrel with the statute. Clearly the statute provides for temporary custody. What I was getting at was the fact that all these extraneous matters were brought in and that smells more like a real custody case, not a temporary custody case. And I know you were a trial court judge in Menard County and have significant experience. An attorney never knows, well often doesn't know, how much evidence will be enough. You try to stick to the initial facts within the order of protection, and certainly I try to make proceedings as brief as I can, whether it's before this court or before a trial court. And then when things come out in testimony and there are counter-allegations, as the hearing evolved, I think the scope got bigger and bigger in terms of what the history was of Isabella in being shared by the parties before the order of protection was, who was the primary caretaker, whether there had been previous instances, whether there had been previous problems. I think that's the door to which the trial court opened fairly largely to begin to look back into time. Did you say that the juvenile case was dismissed? It was. The record will indicate that the juvenile case judge was filed, that DCFS had Ms. Mason go through a series of steps to try to resolve what their main concerns were. I think she had to take some classes and so forth, and that ultimately they decided not to proceed further in the juvenile case and leave it to the Order of Protection Act. I think it was in part a case management decision and a reflection in part that the Order of Protection Act was already pending and there was a case in which the court could resolve the case or resolve these complaints. So I can't speculate completely as to why the state's attorney made the decision, but again, that's what cleared the way to proceed on the order of protection case. What's the visitation schedule? I believe under the plenary order, Judge, that Ms. Mason gets unsupervised visitation every other weekend. I think there is some holiday visitation that has been worked out, and I think, if I recall correctly, Justice Turner, that's the extended. So she has some contact with her daughter. Is the fact that the visitation is unsupervised, is that something the court should consider? Is that some kind of signal that we should read something from? I think the court clearly stated when he was rendering his judgment at the end of the order of protection proceedings, because the visitation had been supervised since the OP had been in place, I think the court clearly stated that he thought there were enough people looking at the situation on both sides of the family that a short-term visitation over a weekend for roughly 48 hours would not put the daughter back in a situation where Ms. Mason could presumably make misjudgments about who's going to take care of her or that if there was the potential for further abuse, that at least there would be a quick turnaround back to the father or to someone else. The court felt that it wasn't necessary given the short duration of the visitation and given the number of people that were now aware of the circumstances. Okay, counsel. Thank you. Rebuttal, please. No rebuttal? Okay. Thanks to both of you. Case is submitted. Court stands in recess.